Good morning, your honors. You may please the court. Jeff Rose of the Institute for Justice, on behalf of the appellants, for the plaintiffs below. This is a complex case with complex facts, but this appeal couldn't be simpler because there is a dispositive, factual dispute, warranting remand, about whether or not donating narrow cells by apheresis is the same as donating regular blood cells by apheresis. And let me explain. The district court erred in refusing to consider the as-applied challenge that the appellants actually brought, ruling instead that as-applied challenges just don't exist in the rational basis context. But as the briefs show, that's just not true. And here, the appellants have stated a claim that at least with respect to apheresis, it is irrational to apply the bone marrow provision to moremarrowdonors.org's program for compensating marrow donors. Do we need to reach the constitutional issue? My thinking was that if we were to substantially agree with you on the irrationality, we still wouldn't reach a constitutional decision. Instead, what we would do is use the doctrine of constitutional avoidance and say when the statute and regulation address the criminality of commercial transactions in bone marrow and the legality of commercial transactions in blood, the way to avoid irrationality is to treat cells extracted from the blood without penetrating the marrow as blood rather than marrow. There's none of the spongy tissue, no needle into the center of the bone, just it's like, well, even some ordinary blood draws now are by the apheresis, you call it? Yes, that's true, Your Honor. It's like giving blood, and instead of getting a felony conviction for that, you get a gold star. Absolutely, Your Honor, and it may be possible under the traditional rule of lenity and the rule that says we avoid constitutional questions where possible. It may be that the statute could be construed not to reach the constitutional question. Rule of lenity is an additional separate doctrine leading to the same conclusion, then? Correct, Your Honor. The problem is that it's not clear whether that would render the bone marrow provision itself a nullity within the statute. Wouldn't we just be interpreting what it means, saying what the definition is? Marrow is the spongy substance that's in the middle of the bones, and blood is the fluid that runs through the veins. Yes, that's absolutely true, Your Honor, and if the court decided as a matter of law that applying NODA to apheresis, compensation to apheresis donation, was actually, it was irrational to apply it, and so the court read the statute so as to permit that. You are saying two different things. I'm sorry? Because you are saying, as I understand it, that it's irrational to include bone marrow in the statute, and I think Judge Kleinfeld was saying something different, which is to narrow the definition of bone marrow so that what happens is outside of an otherwise conceitedly proper statute, and those are two very different questions. Yes, that's absolutely correct, Your Honor. So the bone marrow provision itself could remain in the statute, remain facially valid, and this court could simply interpret the statute so as to exclude the apheresis process. That wouldn't even be an as-applied challenge. I mean, as I understand it, Judge Kleinfeld's suggestion is just to define away the problem. Yes, and the court could certainly just... Which is not any kind of constitutional or even constitutional avoidance. The court would have the prerogative to do that, yes, Your Honor. Well, how do we, is there a definition of bone marrow anywhere that could do that? Well, bone marrow is not defined in the statute. What is defined in the statute is human organ, and bone marrow is defined as a human organ. Correct. There is no specific statutory definition of bone marrow. Nor regulatory. Nor regulatory that would preclude... Is blood defined in the statute? No, it's not, Your Honor. So you've got two undefined terms, bone marrow and blood, and the question is, which word or phrase fits the fluid that's extracted by apheresis? That's correct, Your Honor. And it is certainly within the court's authority to just provide a narrowing definition of bone marrow that would obviate the need to reach the constitutional question. Well, where would we go to look for definitions other than to a desired policy outcome, which isn't our prerogative, it's Congress's? So how do we know what Congress meant by bone marrow? Well, one thing it's possible to do is actually look at the legislative history. Bone marrow is discussed almost not at all. There are about 1,500 pages of legislative history. Bone marrow is virtually nonexistent. Where it does appear is Congress recognizing that the recruitment issue for bone marrow might be slightly different, but Congress specifically accepting from the statute blood and other renewable tissues, of which marrow cells that are collected out of the arm through apheresis would seem to fall under that. That exception considered now in light of the changed circumstances that apheresis is technologically available. Well, a statute means what it means when it's enacted. That's true, Your Honor. So what we have to figure out if we're going to go down this route is when, I guess it was this 2007, or is that just the most recent one that I was looking at? There was a 2007 revision to the statute that had to do with kidneys. The bone marrow provision dates back to 1984 and hasn't been amended. Okay. So we'd be looking at what Congress meant in 1984 when it used the phrase bone marrow. And where would we look? Would we look to medical dictionaries of the time? It's possible to look to medical dictionaries. And what also would be relevant is for the court to appreciate that in 1984, the only method of procuring marrow cells was to actually insert the method into the kidney. But, see, I guess maybe I'm the only one who has this concern, but it seems to me that if a statute means what it means at the time of its enactment. Certainly, Your Honor. And if at the time of its enactment, the provision at issue is rationally related to a legitimate issue, then the statute is just fine from an equal protection point of view or pretty much any other. So times change, and it seems to me it's kind of odd to say that we're going to go back and put our current gloss on what the statute must have been or that a statute that was rational then becomes irrational now from an equal protection standpoint. I mean, it's really asking us to engage in a new policy determination. I respectfully disagree, Your Honor. We're not talking about statutory interpretation, but we're talking about an equal protection question and talking about whether or not changed circumstances are constitutionally relevant. So if it was rational to treat radio differently than television at a certain time, and now you think it isn't, so for 50 years there was no equal protection violation in a statute, but now there is because of a changed technology, does it suddenly become an equal protection violation? It's possible that it may, and that is actually what this Court decided in the Burlington Railroad case in 1985. In that case, the Burlington Railroad had a virtual monopoly over rail service in Montana. They sued in 1969 and said requiring us to provide service to every little town in Montana doesn't make sense. The Court decided it does make sense. They brought another suit 16 years later, and they said we've computerized. We're not even providing service or freight to these towns. It doesn't serve the public convenience and necessity. This Court said... But public convenience and necessity and equal protection are two different things. Well, the relevant question under Burlington Northern, Your Honor, was the Court said if it were true that circumstances had changed so dramatically as to undermine the premise for the statute when it was passed, a statute can lose its rational basis. And, in fact, the Court cites with approval a number of Supreme Court cases, one of which says revolutionary change can obviate a statute's rationality. Do you mean to get there? I thought medical dictionaries now, then, and at all relevant times defined bone marrow as the spongy substance inside the bone. Yes. And blood as the fluid that flows through the veins and arteries. Yes, that's correct. And the only thing that's changed is instead of needing the spongy substance inside the bone for the bone marrow transplants, the technology now enables physicians to use particular cells that are in the fluid that flows through the veins and arteries without obtaining any of the spongy substance inside the bones. Let me just clarify. So is that true? And, if so, why do you need to say that the statute rational when passed has become irrational? Well, let me give you just a tiny clarification, Judge Kleinfeld. Even back in 1984, when they were using the needle in the hip, they weren't removing the spongy tissue. They were just removing the marrow cells that are inside the spongy tissue. But, ultimately, if the Court – it's certainly true that medical dictionaries in 1994 would have defined – I think they were removing more than the cells that are now extracted by the apheresis, weren't they? They were removing fluid in the marrow that included a whole lot of kinds of cells. It's true that they would have to do some – there was some injury to the spongy tissue in the course of extracting the marrow cells. That's true. And it's true that medical dictionaries in 1984 would have said, there is this thing called a hematopoietic stem cell, an immature blood cell. That's what you need in a marrow transplant. That was true then. It's still true now. And the Court could read a narrowing definition to say that procuring hematopoietic stem cells, immature blood cells, just isn't implicated in the statute and could avoid the constitutional question. If I may, let me reserve my remaining three minutes. You're welcome to do that. Thank you, Your Honor. May it please the Court, Helen Gilbert for the Government. I'd like to point the Court to one specific line in the text of the statute which would prohibit the Court from determining the case on the basis of redefining bone marrow. If you look at Section 24E, Subpart C under Definitions. Hold on. I think you're using the Session Law number, and I'm looking at the U.S. Code. I believe it's Section 24E. 42 U.S.C. Section 274E. Got it. And under Subpart C, Definitions, Subpart 1, which defines the term human organ, defines that term to mean bone marrow or any subpart thereof. So therefore, based on the statements of the Court, it said that it would be difficult to define bone marrow as not including the bone marrow cells. But doesn't the statute also provide that it does not prohibit commercial transactions in blood? The statute never mentions blood, Your Honor. The statute merely defines human organs to include bone marrow and any subpart thereof. The legislative history does mention blood from 1984, and plaintiffs assume that blood is not covered because it is not defined in the statute. Well, is blood in the way that you and I think of blood going down to donate blood? Would you concede that that's not covered in the definitions in this statute? Yes, certainly, Your Honor. Okay. So whatever is found in the blood, likewise, has to be, it seems to me, acceptable. Whatever you find there, white cells, red cells, would be part of the blood and therefore not covered by this. Certainly, Your Honor. The statute does not prohibit the sale or transfer for value of blood or its derivatives. But I'd like to point the Court to one other piece of information, is that the health of the donor in terms of the type of donation was only one of many legitimate government purposes Congress had for banning the sale of bone marrow. And we can see this by the fact that Congress did not merely ban the sale of human organs from living donors, but deceased donors can also, excuse me, the organs of bone marrow of deceased donors can also not be used, cannot be sold for any valuable consideration. Therefore, Congress had many other legitimate purposes for banning the sale of bone marrow or its derivatives. For instance, Congress established in 1984 and has subsequently amended the National Organ Transplant Act to try to increase voluntary bone marrow donation. I don't doubt this part of your argument. Whether it's good policy or bad policy, Congress had reasons that are constitutionally acceptable for prohibiting, say, commercial transactions in kidneys. There are a lot of people who think they're wrong as a matter of policy, but that's none of our business. My real interest in the case is if you can sell your blood and you actually get a gold star, people give you a lot of credit for donating blood and you can sell it. And a lot of people do sell blood just to make a little money. Why can't you sell whatever is in the blood in your veins as opposed to whatever substances in your bone marrow, even if it comes from your bone marrow? A lot of the rest of the blood comes from the bone marrow too. For example, your red blood cells come from the bone marrow. If the bone marrow didn't make them, then when they took a blood sample from your arm when you go to the doctor, they wouldn't be there. But that doesn't mean that it's a bone marrow extraction when the doctor takes the blood sample from your arm. That may be correct, Your Honor, but even assuming that there are a number of legitimate reasons for Congress to have prohibited the sale of bone marrow or any part thereof as opposed to blood. Are the red cells that are in your blood when the doctor takes a blood sample from your arm, are they part of the bone marrow? They're made there just like these stem cells. So are they part of the bone marrow? Again, Your Honor, none of this was in the record, I would like to emphasize. So hypothesizing about whether or not the red blood cells in your blood would be part of the bone marrow is difficult to do, but Congress made a decision to ban the sale of bone marrow or any subpart thereof. Wait a minute. Maybe there's a red berry that puts them in your veins. I don't think so. I think that at least some widely accepted scientific facts we can take judicial notice of, and I suspect that one of them is that red blood cells are manufactured in our bone marrow. So I think saying that it's not in the record doesn't really perhaps get you very far, but the statute doesn't define bone marrow and the statute doesn't define what a subpart of bone marrow is. So somehow we have to do that to get to an answer one way or the other. No, that is correct, Your Honor, although plaintiffs would like to establish an organization to pay people to donate their bone marrow and to increase bone marrow donations. That is very clear from the record. I think it would be very difficult for this Court to determine that what plaintiffs want can be done without violating the language of the statute. Congress's intent was to ban the sale of bone marrow or any part thereof. Well, I know that. It depends on what they call it. I mean, if they renamed their organization Baby Red Blood Cells and said what we want is baby red blood cells, and the word marrow is nowhere to be found and the word bone is nowhere to be found, I mean, part of the issue is sort of the semantics of how this has come up, and so I guess, again, I think that kind of is form over substance. I find this very, very difficult, but I don't think it's helpful to say, well, they called it bone marrow because that's kind of the common parlance, and so they're stuck with that. I'm not sure that that's a complete answer either. We call these things briefs, but they're not brief. A hundred years ago they used to be brief. They used to be two or three pages of citations. I think it might be helpful to look at a number of things Congress has done since 1984. Congress has amended the National Organ Transplant a number of times. In 1990 it greatly expanded what is now the National Donor Registry for bone marrow. This ban on the sale of bone marrow and its subparts is part of a much bigger scheme that Congress has enacted to encourage people to voluntarily donate bone marrow, and it has addressed this in a number of ways, and it's particularly concerned with the types of things that clinics are concerned with, which is increasing bone marrow donations and transplantations, particularly for those of mixed race and ethnicity where the matching process is much, much more rare. So this is one part of a very large regulatory scheme, and Congress has made clear with those 1990 amendments, and Congress has also revised the statute in 2007 and 2010 and has not touched the determination that it would not like there to be a market in bone marrow or any subpart thereof. I believe that reading the statute to allow for the types of donations using this particular method that plaintiffs encourage the court to do would be subverting Congress's intent in banning the sale of bone marrow to encourage voluntary donations. Well, no more than in my hypothetical statute that differentiates radio from television. If you suddenly have the Internet, you just walk around radio, and you don't have to worry about whether it was properly in the statute. And similarly here, I think what they're saying is we have an Internet that walks around radio. They're saying there's a process that's used to extract blood, and we now know so much about how to deal with that blood that we can extract its constituent parts, its constituent parts, including plasma, which can be sold. And it turns out these baby red blood cells are in there too, but they're floating around. They're not inside the bone at that point. Two points to that, Your Honor. One is that that would essentially be rewriting Congress's policy determinations about whether or not there should be a market in bone marrow. But two, even just based on Plaintiff's complaint, there are a number of differences between bone marrow and blood. For instance, this new method of extracting bone marrow requires a donor to receive an injection every day for five days before donating bone marrow. That's distinct from using that method to donate blood, at least based on the complaint. Second, there are a number of differences between those bone marrow cells and blood cells, two things that tie in again to Congress's legitimate interest in banning the sale of bone marrow. One is that the match between bone marrow cells between donors and patients is much, much more difficult than that between blood donations that go to certain vulnerable patients. That could tie into Congress's desire to ensure that donors with rare matches would not be exhorting large sums of money from vulnerable patients. That seems much more important in the bone marrow context than in the blood context. Let me give you a hypothetical. Sure. Let's suppose that the technology advances to where, I don't know if it would be an advance or just a simplification, but to where you don't use the aphoresis technique anymore. Instead, you just tell people, eat some steak and spinach the week preceding your blood donation, build up your iron a little, and your other minerals. And then you give a blood donation, and it's identical to when you contribute blood to a blood bank, just identical. They take the blood out of your vein, and it goes into the soft plastic bottle. And then what they do, the separation techniques have become good enough so that they can then separate from the bottle the baby cells, the stem cells, and accumulate enough of them in good enough condition to do the bone marrow procedure on recipients with what they've extracted that way. Would paying people for those blood donations be a felony unless the blood bank, after separating out the stem cells, put them back inside the donor? That's an interesting question, Your Honor. I think there would be a number of steps to analyze. One would be whether paying the donor for what they assumed was a blood donation would sense being ---- Same deal. You want to give a blood donation, we're delighted, we'll give you $50. That would hypothetically likely be fine under the statute, but then the ---- But they're still using it to get the stem cells to give to the marrow recipients. But the statute prohibits knowingly acquiring, receiving, or otherwise transferring any human organ ---- Well, nobody is ignorant. They all know what they're doing. Well, then that would be a problem, Your Honor. And again, I'd like to just point the court back to the fact that the method of donation was not one of the only reasons that Congress ---- So you're saying it's only legal if they say, oh, I had no idea there were stem cells in there. I had no idea there were stem cells in the blood I was giving. I had no idea there were stem cells in the blood I was receiving. Well, no, Your Honor, it's that Congress wasn't irrational when it determined that there shouldn't be a market in bone marrow or any subpart thereof. I was asking you about the definition rather than the rationality. Of bone marrow. Yeah. Does it count as bone marrow if it's just like any other blood donation? Well, but that's a two-step process, Your Honor, it seems, under your hypothetical. That first donation looks just like a blood donation, and that's, again, a hypothetical ---- It becomes a marrow donation at the next step where the laboratory separates out the blood with centrifuge and chemicals so that they get the stem cells out of it and concentrate them. Based on your hypothetical, it would seem that that second step would be problematic under the current state of the statute. Why is that problematic, that Congress is protecting donors from all the improprieties that can come about from organ donations for money, but the donor is doing the same thing he does when he gives blood before they invented that technology? Because, Your Honor, Congress had goals other than protecting donors. Do you think Congress is against the bone marrow procedure? It can't be. It created a system for facilitating them. No, certainly, but it created a system based on voluntary donation and altruism, and there's a large debate about what's the best way to increase organ donation in this country, and Congress made a policy judgment that the best way in bone marrow donation is to encourage voluntary donation, and that's clear from the 1984 legislative history where Congress first established, when it established the ban, a whole committee to determine whether or not there should be a national system in 1990 when they expanded that national voluntary bone marrow registry, and then the subsequent amendments to the statute, where we assume Congress is aware of the changes in technology, but has not amended the statute to allow for the sale of bone marrow or any subpart thereof. What does the record or the complaint show about how many, if any, of these usable cells are contained in naturally occurring blood without the use of the five days or whatever, however many days of injections of the special substance that causes them to be released? I don't believe, Your Honor, that there's any information in the complaint regarding whether or not using the new method it's possible to extract the necessary cells for a bone marrow transplant without the special injections that occur on a daily basis, but again, merely based on the face of the complaint, plaintiffs have still not established an equal protection claim. And further, to read the statute to allow for this second type of donation would be contrary to Congress's intent when it passed the statute and Congress's subsequent legislation regarding the voluntary system of bone marrow transplantation. Plaintiffs are asking the court to rewrite the statute based on its policy objectives, which I can see are certainly laudable, but those goals should be directed to Congress to determine what the best system of donation for bone marrow is not to this court. Thank you, Counsel. Thank you. Just very quickly, Your Honor, let me address the medicine question because that's something that came up. That's a red herring. You don't have to worry about the medicine. It's not illegal in America to pay somebody to take medicine. It's undoubtedly the company that developed this pharmaceutical. Well, it bears on the definitional question. If you have to do a lot of jiggering to the system to get parts of the bone marrow or parts of the pancreas or parts of the lungs or any of the other things that are mentioned in the statute into the bloodstream, then it's a little more questionable whether those aren't still subparts of the organ named as distinct from just blood. So that's the reason I asked the question. Under the complaint, Your Honor, these baby blood cells are not part of an organ. They are just baby blood cells. Well, but they come from the bone marrow. Yes. And the purpose of the injections is to cause them to be spit out. I mean, I'm not a doctor, obviously. Spit out into the blood system. That's right. Right. So I think it makes them more likely subparts of marrow than it does make them parts of the blood because if you just take, you know, if I cut your finger right now, plasma and other things would be coming out, but probably these other cells would not, and that's the reason I asked. The complaint doesn't specifically say whether the cells would come out. Some cells would actually come out, but they wouldn't come out in the same volume as if you didn't take this medicine to mobilize them. Is that the way it works? If I cut my finger right now, some stem cells would come out. It's just it wouldn't be enough to be of any use to anyone? Yes. It's not in the record, Your Honor, but I can tell you that there is a measurable volume. And as I understand it, what you're saying about giving the people the medicine to increase production of the stem cells is no different from those ads on the back of the underground newspapers where you can participate in a pre-FDA approval trial of a medicine and they give you $50. Exactly. Presumably they had to test this medicine on people to know how much medicine you give healthy people to mobilize enough of these marrow cells. It's not illegal to do that, and it can't be true that Congress thinks giving people this medicine becomes illegal if and only if it saves some dying child's life. Well, no, but I think what you're working to avoid, which is understandable, is the question of whether these cells are subparts of the marrow under the meaning of the statute. And that's the relevance of the question, in my mind at least, as to whether they count as just blood that happens to be collected in a longer-term process than the usual donation, or whether it's really a subpart of the marrow that's been forced to come out into the body in some other way. Let me help the Court understand it this way. Under the allegations of the complaint, beginning at about paragraph 70 and running through about paragraph 78, the complaint alleges, and must assume to be true, that the marrow itself, the spongy tissue, is one thing. The little baby blood cells, they live in spaces inside the marrow, they come out into the circulating bloodstream, and they can be mobilized. But marrow cells are not an organ. They are not defined as an organ in any medical dictionary. They just aren't. They're just baby blood cells. And if the Court is concerned about those particular facts, then on the 12b-6, this case just has to be remanded, and the district court can investigate in the first instance whether or not the doctrines of constitutional avoidance and the rule of lenity apply to generate a narrowing definition of the statute. Or in the alternative, because plaintiffs are allowed, under the Ninth Circuit precedent like Lazy Y or Lockery, to deduce evidence to refute asserted government rationales, then we're entitled to remand in the event the Court can't decide and the equal protection claim is viable. Thank you, Counsel. Thank you, Your Honor. We appreciate the very helpful arguments of both parties in this difficult and interesting case. And the case is submitted, and we will stand adjourned for this morning's session. All rise. The session is adjourned.
judges: Goodwin, Kleinfeld, Graber